655 A.2d 568

COMMONWEALTH of Pennsylvania

v.

Jose Manuel DASILVA, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 7, 1994.

Filed Feb. 28, 1995.

292

Stephen L. Shields, Bethlehem, for appellant.

John M. Morganelli, Dist. Atty., Bethlehem, for Com.

Before CAVANAUGH, KELLY and BROSKY, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether a motorist who fails to stop when meeting or overtaking a school bus whose red signal lights are flashing and whose side stop signal arms are activated, may be convicted of violating 75 Pa.C.S.A. § 3345(a),[1] where the operator of the school bus failed to activate her amber lights no less than one hundred, fifty (150) feet prior to making a stop pursuant to the statutory requirement of 75 Pa.C.S.A. § 3345(d).[2] Although the Commonwealth's evidence does indeed indicate a failure on the part of the school bus operator to activate the amber lights at the required distance, we hold that the appellant may still be convicted of violating 75 Pa.C.S.A. § 3345(a). Thus, we affirm.

The relevant facts and procedural background are as follows. On April 23, 1993 at approximately 8:30 a.m., while seated in her van at a stop sign on the east side of the intersection of Sixth Street and Buchanan Street in Bethlehem, Pennsylvania, Debra Eiclen, a private citizen, observed the appellant, Jose Manuel DaSilva, who was driving a white 1993 Dodge mini-van, proceed through the intersection from the south on Buchanan Street and pass a school bus which had

1. This subsection as amended December 19, 1988 states:
 (a) **Duty of approaching driver when red signals are flashing.**— Except as provided in subsection (g), the driver of a vehicle meeting or overtaking any school bus stopped on the highway shall stop at least ten feet before reaching the school bus when the red signal lights on the school bus are flashing and the side stop signal arms are activated under section 4552(b.1) (relating to general requirements for school buses). The driver shall not proceed until the flashing red signal lights are no longer actuated. In no event shall a driver of a vehicle resume motion of the vehicle until the school children who may have alighted from the school bus have reached a place of safety.
 75 Pa.C.S.A. § 3345(a).

2. The pertinent subsection states:
 (d) **Use of amber signals.**—The amber visual signals shall be actuated by the driver of every school bus not more than 300 feet nor less than 150 feet prior to making a stop for the purpose of receiving or discharging school children and shall remain in operation until the red visual signals are actuated. Amber signals shall not be used unless the red visual signals are to be actuated immediately following.
 75 Pa.C.S.A. § 3345(d).

stopped just before the north side of the intersection to discharge children and had its red flashing lights and side stop signal arms activated. Ms. Eiclen recorded the appellant's license plate number, DDE154, and proceeded to the police sub-station to report the incident. The police contacted the driver of the school bus, Lori Kern, who confirmed the incident. On the basis of Ms. Eiclen's assertions, the police issued a citation; District Justice Nancy Matos found the appellant guilty of the charge and ordered the appellant to pay a fine of $100.00 plus costs. The appellant appealed to the Common Pleas Court. On October 28, 1993, at the request of both the appellant and the Commonwealth, Judge F.P. Kimberly McFadden continued the case to December 2, 1993. Prior to the hearing date, on November 23, 1993, Judge McFadden sustained the appeal, pursuant to *Commonwealth v. Fulmer*, 423 Pa.Super. 338, 621 A.2d 146 (1993). On December 3, 1993, having reconsidered her disposition of the appeal, Judge McFadden vacated the November 23, 1993 order and scheduled the case for a hearing on January 5, 1994. Several continuances later, on March 31, 1994, Judge McFadden filed another order, affirming the December 3, 1993 order. The case was then listed for trial on May 4, 1994. A continuance was granted until June 1, 1994. Following a trial *de novo* on June 1, 1994 before Judge McFadden, at which both Ms. Eiclen and Ms. Kern testified for the Commonwealth, the appellant was again convicted of the charge and ordered to pay a $100.00 fine plus costs. The appellant brought this timely appeal.

The appellant presents the following questions for our review:

1. DID THE TRIAL COURT COMMIT AN ERROR OF LAW IN FAILING TO REQUIRE THE COMMONWEALTH TO FOLLOW THE CITATION FILING PROCEDURE DELINEATED IN § 3345(a.1) OF THE PENNSYLVANIA MOTOR VEHICLE CODE?

2. DID THE TRIAL COURT COMMIT AN ERROR OF LAW BY VACATING ITS OWN ORDER SUSTAIN-

ING APPELLANT'S APPEAL AND THUS SUB-
JECTING APPELLANT TO DOUBLE JEOPARDY?

3. DID THE TRIAL COURT COMMIT AN ERROR OF
LAW IN FAILING TO DISMISS THIS CASE AF-
TER THE COMMONWEALTH FAILED TO SHOW
THAT THE BUS OPERATOR ACTIVATED HER
AMBER LIGHTS NO LESS THAN 150' FEET PRI-
OR TO MAKING A STOP PURSUANT TO THE
STATUTORY REQUIREMENT OF 3345.3(d) [sic]?

Appellant's Brief at 3.

■ The scope of appellate review of a trial *de novo* is
limited to a determination of whether the trial court's findings
of fact are supported by competent evidence and/or whether
an error of law was committed. *Commonwealth v. Horney*,
365 Pa.Super. 152, 154, 529 A.2d 18, 19 (1987) (citing *Common-
wealth v. Gray*, 356 Pa.Super. 299, 514 A.2d 621 (1986),
*allocatur denied*, 514 Pa. 638, 523 A.2d 345 (1987)). Absent a
manifest abuse of discretion, we shall not disturb on appeal
the findings of the trial court. *Id.*

■ The appellant contends that the trial court erred when
it vacated its order of November 23, 1993 discharging the
appellant. The appellant argues that the order sustaining his
appeal pursuant to *Commonwealth v. Fulmer, supra* 423
Pa.Super. 338, 621 A.2d 146 represented an acquittal and
therefore a final adjudication in the matter, thus reinstate-
ment of the charge would place him in double jeopardy. We
cannot agree.

The protections afforded by the Double Jeopardy Clause of
the United States Constitution and the Pennsylvania Consti-
tution are coextensive, involving the same meaning, purpose
and end. *Commonwealth v. McCane*, 517 Pa. 489, 539 A.2d
340 (1988); *Commonwealth v. Sojourner*, 513 Pa. 36, 518
A.2d 1145 (1986). This clause protects against multiple
prosecutions for the same offense after acquittal and against
multiple punishments for the same crime. *Commonwealth
v. Arriaga*, 422 Pa.Super. 52, 618 A.2d 1011 (1993); *Com-
monwealth v. Rightley*, 421 Pa.Super. 270, 617 A.2d 1289
(1992).

*Commonwealth v. Quinlan,* 433 Pa.Super. 111, 120 n. 4, 639
A.2d 1235, 1240 n. 4 (1994). Further, as stated in the dissent-
ing opinion in *Commonwealth v. Kern,* 294 Pa.Super. 151, 439
A.2d 795 (1982), *overruled on other grounds by Common-
wealth v. Butler,* 389 Pa.Super. 209, 566 A.2d 1209 (1989):

> it is axiomatic that in order to prevail on a plea of double
> jeopardy the defendant must establish that he has already
> been once placed in jeopardy. In a jury case, jeopardy
> does not attach until the jury has been impaneled and
> sworn; and in a non-jury case, jeopardy attaches when
> the accused has been subjected to a charge and the court
> has begun to hear evidence.

*Commonwealth v. Smith,* 232 Pa.Super. 546, 548–549, 334
A.2d 741, 742 (1975). Consequently, where jeopardy has not
attached *ab initio,* there can be no viable subsequent claim
of double jeopardy.

*Commonwealth v. Kern, supra,* 294 Pa.Super. at 158–59, 439
A.2d at 798–99.[3] *See also Commonwealth v. Rosario,* 418
Pa.Super. 196, 613 A.2d 1244 (1992), *allocatur granted,* 535 Pa.
646, 633 A.2d 151 (1993).

 A pretrial order which discharges a defendant is a
final order. *Commonwealth v. Butler, supra,* 389 Pa.Super. at
212, 566 A.2d at 1210; *Commonwealth v. Andrews,* 251 Pa.Su-
per. 162, 164, 380 A.2d 428, 429 (1977). As a general rule, a
trial court may not modify a final order beyond the thirty day
statutory time limit set forth in 42 Pa.C.S.A. § 5505. *Com-
monwealth v. Fralic,* 425 Pa.Super. 581, 585, 625 A.2d 1249,
1251 (1993). A trial court, however, has the power to rescind
a pretrial order discharging a defendant if the court acts
within thirty days of the entry of the order. *Commonwealth
v. Butler, supra,* 389 Pa.Super. at 212, 566 A.2d at 1210;
*Commonwealth v. Kern, supra,* 294 Pa.Super. at 156, 439 A.2d

---

3. We note also that where an appellant was found guilty before a
district magistrate and timely filed an appeal to the Common Pleas
Court for a trial *de novo,* an appellant may not argue a violation of
double jeopardy. *Commonwealth v. Sanford,* 497 Pa. 442, 444, 441
A.2d 1220, 1221 (1982) (citing *Commonwealth v. Thomas,* 448 Pa. 42,
47, 292 A.2d 352, 355 (1972)); *Commonwealth v. Shirey,* 333 Pa.Super.
85, 115 n. 12, 481 A.2d 1314, 1330 n. 12 (1984).

at 797–98; *Commonwealth v. Sheppard*, 372 Pa.Super. 550, 551–52, 539 A.2d 1333, 1334 (1988). Thus, "the court's exercise of its power under § 5505 of the Judicial Code is almost entirely discretionary; this power may be exercised *sua sponte....*" *Justice v. Justice*, 417 Pa.Super. 581, 586, 612 A.2d 1354, 1357 (1992), *allocatur denied*, 533 Pa. 635, 621 A.2d 581 (1993). *See also Hutchison by Hutchison v. Luddy*, 417 Pa.Super. 93, 108, 611 A.2d 1280, 1288 (1992), *appeal dismissed*, 538 Pa. 484, 649 A.2d 435 (1994) (citing *Atlantic Richfield Company v. J.J. White*, 302 Pa.Super. 276, 448 A.2d 634 (1982)) ("court has inherent power to reconsider its own rulings").

In the instant case, the trial court set a date for the appellant's trial *de novo*. Prior to that date, the trial court determined as a matter of law that, pursuant to *Commonwealth v. Fulmer, supra* 423 Pa.Super. 338, 621 A.2d 146, the appellant's appeal should be sustained and entered an order to that effect on November 23, 1993. On December 3, 1993, having *sua sponte* reconsidered its order within thirty days after its entry, the trial court vacated its previous order and again scheduled the appellant for trial. The appellant, although subjected to a charge, had not been placed in jeopardy because the trial court had not yet begun to hear evidence. *See Commonwealth v. Rosario, supra* 418 Pa.Super. 196, 613 A.2d 1244; *Commonwealth v. Kern, supra*. Because the appellant had not been placed in jeopardy, the trial court's December 3, 1993 order could not have placed him in double jeopardy.

■ As to the appellant's assertion that the November 23, 1993 order was an acquittal, the ruling of the trial court did not represent a resolution of any of the factual elements of the offense charged. *See Commonwealth v. MacArthur*, 427 Pa.Super. 409, 629 A.2d 166 (1993). Hence, the order of November 23, 1993 was not an acquittal and reinstatement of the charge would not place him in double jeopardy. Therefore, we conclude that the appellant's second issue as presented is without merit. We now proceed to the appellant's first issue presented.

The appellant asserts that the trial court erred when it failed to require the Commonwealth to adhere to the citation filing procedure delineated in 75 Pa.C.S.A. § 3345(a.1) [4] of the Pennsylvania Motor Vehicle Code. The appellant argues that because the school bus driver observed the violation, had knowledge concerning the identity of the vehicle in question, and knew that the police also possessed the information and were acting upon it, she should have filed a written, signed report to be included with the citation. (Appellant's Brief at 7). We disagree.

In support of this proposition, the appellant cites *Commonwealth v. Fulmer, supra* 423 Pa.Super. 338, 621 A.2d 146. There, Ms. Fulmer overtook a school bus while its flashing red

**4.** Section 3345 of Title 75 of the Pennsylvania Consolidated Statutes Annotated states in pertinent part:

**(a.1) Reports by school bus operators.—**

(1) The operator of a school bus who observes a violation of subsection (a) may prepare a signed, written report which indicates that a violation has occurred. To the extent possible, the report shall include the following information:

(i) Information, if any, pertaining to the identity of the alleged violator.

(ii) The license number and color of the vehicle involved in the violation.

(iii) The time and approximate location at which the violation occurred.

(iv) Identification of the vehicle as an automobile, station wagon, motor truck, motor bus, motorcycle or other type of vehicle.

(2) Within 48 hours after the violation occurs, the school bus operator shall deliver a copy of the report to a police officer having authority to exercise police power in the area where the violation occurred. If the police officer believes that the report establishes a sufficient basis for the issuance of a citation, the officer shall file a citation and the report with the issuing authority. If the issuing authority determines that the report and citation establish a sufficient basis for the issuance of a summons, a summons shall be issued in accordance with general rules governing the institution of proceedings in summary traffic offense cases. The issuing authority shall send the defendant a copy of the citation, together with a statement that it was filed by the police officer named in the citation on the basis of information received.

(3) A person may institute a proceeding pursuant to this subsection or in accordance with any means authorized by the Rules of Criminal Procedure.

Added 1984, March 29, P.L. 155, No. 30, § 3, effective in 60 days. 75 Pa.C.S.A. § 3345(a.1).

lights and stop signal arm were activated at a school bus stop. The school bus driver did not see the driver of the automobile which had passed her, nor could she identify the automobile's color. Two days later, the school bus operator received a note from the mother of one of her passengers. In the note, the identity of the driver of the automobile which had overtaken the school bus was provided. The school bus driver gave the information to her supervisor who then verbally communicated it to the Hampton Township Police Department. Officer William Leo testified at trial that he conducted an investigation and then issued a citation. Ms. Fulmer was found guilty by the district justice and she filed a timely *pro se* appeal. Following a *de novo* trial in the Court of Common Pleas, Ms. Fulmer was again found guilty of violating 75 Pa.C.S.A. § 3345(a). Ms. Fulmer filed a timely post trial motion in arrest of judgment; the motion was dismissed following argument. Ms. Fulmer then appealed to the Superior Court.

On appeal, Ms. Fulmer argued that the plain meaning of the statute required that whenever a police officer learns of an alleged violation of 75 Pa.C.S.A. § 3345(a) through the report of a school bus operator, as opposed to any other person, the report must be filed with the citation. The Superior Court reversed the order of the trial court, dismissed the citation, and discharged Ms. Fulmer, holding that "a school bus driver who initiates legal action against the violator of § 3345(a) *must* do so by filing a signed, written report which includes the information enumerated in subsections (i) through (iv) of § 3345(a.1)" *Commonwealth v. Fulmer, supra,* 423 Pa.Super. at 342, 621 A.2d at 148.

In contrast, in the instant case, the police received a report of the incident from a private citizen. They contacted the school bus driver merely for confirmation that the incident had occurred. At trial, the school bus operator testified that she saw a white van approaching the school bus from the opposite side of the street. (N.T. June 1, 1994 at 21). She then stated that the reason that she did not report the incident was because she "did not have an accurate description nor a plate number" and in cases such as this one, she had

been instructed not to file a report. (*Id.* at 24). Therefore, the citation filing procedure found in 75 Pa.C.S.A. § 3345(a.1), as interpreted by *Commonwealth v. Fulmer, supra* 423 Pa.Super. 338, 621 A.2d 146, is inapplicable because the incident from which the charge arose had been reported by a private citizen and not the school bus operator. Thus, the appellant's first issue is without merit.

In his third issue, the appellant asserts that the trial court erred when it failed to grant a demurrer because the Commonwealth did not prove that the school bus driver's actions conformed with the statutory requirements of 75 Pa. C.S.A. § 3345(d) which are that the amber visual signals must be activated by the driver of every school bus not more than three hundred feet nor less than one hundred and fifty feet prior to making a stop for the purpose of receiving or discharging school children. The appellant argues that the legislative intent of 75 Pa.C.S.A. § 3345(d) is clear: "[T]he legislature provided the mandate of this section to allow operators of vehicles in the vicinity of the school bus ample notice to take the necessary action of stopping in a timely fashion." (Appellant's Brief at 9). However, because the appellant's trial counsel did not rest following the adverse ruling on the appellant's demurrer but instead proceeded to present a case in defense, a challenge on appeal to the propriety of this ruling may be considered only as a challenge to the sufficiency of the evidence as a whole. *Commonwealth v. Wallace,* 522 Pa. 297, 315, 561 A.2d 719, 728 (1989); *Commonwealth v. Woods,* 432 Pa.Super. 428, 438, 638 A.2d 1013, 1018 (1994), *allocatur denied,* 539 Pa. 650, 651 A.2d 537 (1994); *Commonwealth v. Price,* 416 Pa.Super. 23, 610 A.2d 488 (1992).

Pennsylvania law is well-settled that:
In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Commonwealth v. Hanes,* 361 Pa.Super. 357, 361, 522 A.2d 622, 623–24 (1987); *Commonwealth v. Reddix,* 355 Pa.Super. 514, 519, 513 A.2d 1041, 1045 (1986);

*Commonwealth v. Duffy,* 355 Pa.Super. 145, 154–55, 512 A.2d 1253, 1260–61 (1986). If [the trier of fact] could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. *Commonwealth v. Gerulis,* 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992); *Commonwealth v. Berkowitz,* 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992).

*Commonwealth v. La,* 433 Pa.Super. 432, 459, 640 A.2d 1336, 1350 (1994); *Commonwealth v. Wood,* 432 Pa.Super. 183, 199–200, 637 A.2d 1335, 1343 (1994). The trier of fact is entitled to believe all, part, or none of the evidence adduced at trial. *Commonwealth v. Price,* 420 Pa.Super. 256, 264, 616 A.2d 681, 685 (1992) (citing *Commonwealth v. Sullivan,* 399 Pa.Super. 124, 581 A.2d 956 (1990); *Commonwealth v. Westcott,* 362 Pa.Super. 176, 523 A.2d 1140 (1987)). It is within the province of the trier of fact to determine the weight to be given each witness' testimony. *Commonwealth v. Molinaro,* 429 Pa.Super. 29, 33, 631 A.2d 1040, 1042 (1993) (citing *Commonwealth v. Parker,* 387 Pa.Super. 415, 564 A.2d 246 (1989)). Where conflicting accounts of the same event are given by witnesses, the credibility of the witnesses is crucial to a finding of innocence or guilt. *Commonwealth v. Price, supra* 420 Pa.Super. 256, 616 A.2d 681; *Commonwealth v. Pirela,* 398 Pa.Super. 76, 84, 580 A.2d 848, 852 (1990), *allocatur denied,* 527 Pa. 672, 594 A.2d 658 (1991).

Instantly, the record evidence adduced at trial reveals that a private citizen, Debra Eiclen, while seated in her automobile at an intersection, observed the appellant seemingly ignore the flashing red signal lights and side stop signal arms of a school bus and proceed through the intersection past the school bus whose operator was also sounding the horn repeatedly. (N.T. June 1, 1994 at 5, 10–12). Ms. Eiclen reported the incident to the police, providing a description of the vehicle and the license plate numbers. (*Id.* at 10–12). The police contacted the school bus operator for confirmation of the incident.

The school bus driver testified that she had activated her amber lights as she turned the corner from Fifth Street onto Buchanan Street approximately twenty-five feet from the location where she eventually halted the school bus. (*Id.* at 21,

25). She then stopped the school bus in the roadway next to the appropriate location at the stop sign at Sixth and Buchanan Streets because automobiles were improperly parked at the school bus stop in a clearly marked no parking zone. (*Id.*). When she opened the doors to allow the children to alight, the red flashing signal lights and side stop signal arms were automatically activated. (*Id.* at 24). As children were exiting the school bus, a red Thunderbird approached and attempted to pass the school bus. (*Id.* at 21). The operator sounded her horn and the red Thunderbird stopped alongside the school bus' left side stop signal arm, approximately two car widths away from the stop arm. (*Id.*). As the school bus driver watched the children continue to exit from the school bus, she noticed a white van, approximately ten or fifteen feet away, approaching from the opposite side of Buchanan Street. (*Id.* at 21–22). The school bus operator again sounded her horn repeatedly but the vehicle continued to slowly approach. (*Id.* at 21). The white van proceeded north on Buchanan Street around the red Thunderbird and then between the red Thunderbird and the school bus, almost hitting the school bus' activated side stop signal arm. (*Id.*). The school bus operator testified that she had neither an accurate description nor the license plate number of the vehicle and had been instructed not to file a report in instances where she lacked this information. (*Id.* at 24). The Commonwealth then rested its case.

The appellant moved for dismissal of the charge. The motion was denied. Following the trial court's denial of the appellant's motion for dismissal of the charge (*id.* at 26–27), the appellant presented the testimony of Fernando Lopez, a neighbor, who stated that he was driving in the area at approximately the time the incident allegedly occurred. (*Id.* at 28). Mr. Lopez testified that he saw the school bus operated by Lori Kern, that the school bus was parked alongside the curb (*id.* at 28–29), that the red, flashing lights and side stop signal arms were not activated when he saw the school bus (*id.* at 29), and that he had never seen the school bus with its lights activated. (*Id.* at 31). Mr. Lopez also testified that he did not see the appellant either ahead of his vehicle or behind his vehicle when he saw the school bus

parked alongside the curb in the 500 block of Buchanan Street.

The appellant then testified that on the date and at the appropriate time, he recalled bringing his vehicle to a complete stop at Sixth and Buchanan Streets, across the intersection from the school bus in question. The appellant stated that he saw the school bus and that it was discharging children at the time, but that he did not see any red, flashing lights or side stop signal arms activated. (*Id.* at 36–37). He also attested that the school bus was parked immediately adjacent to the curb, not in the roadway. (*Id.* at 35).

The trial court, sitting as the trier of fact, listened to the witnesses' contradictory accounts of the incident, observed their demeanor, weighed their credibility, and determined that the appellant was guilty of violating 75 Pa.C.S.A. § 3345(a). Because the red signal lights on the school bus were flashing and the side stop signal arms were activated, the appellant had a duty to stop at least ten feet before reaching the school bus and not proceed until the flashing red signal lights were no longer actuated. 75 Pa.C.S.A. § 3345(a).[5]

We agree with the trial court that the appellant's claim that because the operator of the school bus failed to activate the amber lights no less than one hundred, fifty feet prior to making a stop he cannot be found guilty, is meritless. The reason for requiring school bus drivers to activate their amber lights no less than one hundred, fifty feet prior to stopping the school bus to receive or discharge children is simply to provide a warning to other drivers on the road of the imminent stop which will be made by the school bus and must consequently be made by the other drivers. *See* 75 Pa.C.S.A. § 3345(a), (d). Even assuming that the school bus driver had actuated the amber lights at the legally mandated distance from the intend-

**5.** The only exception is provided in subsection (g) as follows:

**(g) Exceptions from stopping requirements.**—The driver of a vehicle upon a highway with separate roadways need not stop upon meeting or passing a school bus with actuated red signal lights which is on a different roadway.

75 Pa.C.S.A. § 3345(g). Instantly, the appellant and the school bus were not on separate roadways.

ed stop, the amber lights would have been activated while the school bus was still on Fifth Street, out of the line of vision of any drivers who might be approaching the school bus from the south on Buchanan Street as the appellant did. Thus, activating the amber lights at any greater distance from the bus stop than the corner of Fifth Street and Buchanan Street would not have provided a warning to the appellant of any longer duration. The appellant obviously could not have seen around the corner of Fifth and Buchanan Streets to be warned as he had not even reached the intersection of Sixth and Buchanan Streets. Because the appellant could not have seen the amber lights prior to the school bus turning onto Buchanan Street from Fifth Street, it was irrelevant to the appellant's conviction whether the amber lights were activated at the corner of Fifth and Buchanan Streets or at some distance prior to that point on Fifth Street. After careful study of the record, we conclude that the evidence, when viewed in the light most favorable to the Commonwealth along with all reasonable inferences drawn therefrom, was sufficient to support the verdict of guilty to the charge of violating 75 Pa.C.S.A. § 3345(a).

Based upon the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.